IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-281-CMA-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.  ALAN TIMOTHY HERSHEY,**
2.  RENEE MOLINAR,

      Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT ALAN TIMOTHY HERSHEY'S MOTION FOR REVOCATION OF DETENTION ORDER AND THE SETTING OF CONDITIONS OF RELEASE (Doc. 29)**
_____

      The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado, and Assistant United States Attorney Linda Kaufman, opposes the revocation of the order detaining Defendant Hershey and maintains that Defendant Hershey poses a serious risk of flight and that there is no condition or combination of conditions which would reasonably assure his appearance in this case as required, and as grounds therefor, states as follows:

      1.    Defendant Hershey has established, over a period of many years, a pattern of concealing his activities, income, and assets, and has taken extreme measures to minimize his public visibility and traceability.

      2.    The defendant has chosen not to disclose to the U.S. Pretrial Services any information relating to his current finances, other than to reveal that he is unemployed.

1

     3.     Although the defendant has some family in Colorado, and has lived here for years, he has no ties, either family or otherwise, which are the type that would exert a level of control that would prevent him from fleeing to avoid a lengthy prison sentence.

     4.     The unrebutted evidence presented at the July 17, 2014 detention hearing[1] established, among other things:

     a. In 1997, when the defendant was openly operating Johnstown Liquor, the state licensing authority discovered that he had been purchasing stolen beer from employees of a distributor. When he was then required to turn over business records to the state authorities, he failed to do so. As a result of its investigation, the state required that he sell his license to a <u>bona</u> <u>fide</u> purchaser or have it revoked. He opted to sell his liquor license to his then girlfriend, Renee Molinar. The state licensing authority ordered him not to work at the liquor store. He then began operating the business from behind the scenes and continued to do so for years.

     b. The defendant regularly received large amounts of cash which had been removed from the cash receipts of Johnstown Liquor. He instructed others to remove it from the daily receipts before the business's bank deposits were made. For the period from 2007 through 2010, the total gross cash deposits to the Johnstown Liquor accounts were approximately $470,000. For the same period, the point of sale records show that the actual gross cash receipts were approximately $4,500,000.

---

[1] See Attachment 1, the transcript of that hearing, filed under restriction, and Attachments 2-5, the admitted Exhibits

c. The defendant had a second set of books created, which falsely reflected that the total receipts were substantially less than they actually were.

d. Instead of having the cash receipts of Johnstown Liquor deposited into its bank account, the defendant caused third party checks from its check-cashing business to be deposited. The deposits of those checks was not evidence of income to the business, where deposits of the cash would have been evidence of income.

e. Over a period of years, the defendant concealed his use of large amounts of cash by providing nominees with the funds to purchase real estate and two other liquor businesses in their names and the names of entities.

f. He attempted to conceal the transfer of that cash from the government by causing deposits and withdrawals to be structured in amounts of less than $10,000.00.

g. When those other businesses were sold, the defendant indirectly received the proceeds of the sales in cash which totaled approximately $1,000,000. He also received the proceeds from the sales of most of the properties.

h. IRS criminal investigators interviewed Renee Molinar and Charles Reichert in July 2011. In November 2011, Molinar transferred the Johnstown Liquor business to Ben Fisher, a young employee at the store. The sale price was $250,000, which included the business, its goodwill, and inventory. Fisher paid $20,000 down, with the remainder to be financed by Molinar. Bank records revealed that the $20,000 down

    payment came from Mr. Fisher's wages from Johnstown Liquor, and that there were virtually no other deposits in that account. Fisher stated that he was living off loans from his father and Defendant Hershey during that time.

i. After one of the nominees quit-claimed three real properties to the defendant in January 2012, he liquidated those properties, as well as four others held by Co-defendant Molinar. The defendant and Molinar sold them in March 2012 to the defendant's uncle. Molinar withdrew approximately $550,000 of the proceeds in cash from the Johnstown Liquor account to which it had been wired and carried it from the bank in her backpack. Defendant Hershey purchased gold, silver, and platinum with the remainder, approximately $460,000. Hershey had these precious metals sent to himself at the Johnstown Liquor store address in April 2012.

j. In April 2014, two weeks after Mr. Fisher was questioned about his possible role as a nominee owner of Johnstown Liquor for Defendant Hershey, the business was advertised for sale by Mr. Fisher. The sale price was approximately $1.7 million, which did not include the inventory; the inventory was valued in the ad at $400,000.

k. The defendant has consistently used vehicles registered in others' name.

l. The defendant has used phone numbers registered in others' names.

m. The last federal income tax return filed by the defendant was for the year

        1984.

    n. The defendant has negotiated and arranged the purchase of numerous properties, but has purchased no real estate in his own name. In one instance, he showed the prospective buyer a suitcase full of cash at the Gilcrest Liquor store to convince him that a cash purchase was possible. On a similar occasion, Co-defendant Molinar showed a prospective buyer a safe full of cash at the Johnstown Liquor store.

    o. The defendant has avoided opening bank accounts in his own name.

    p. The defendant is not married and has no children.

5.    The evidence presented at the July hearing reveals that the defendant acted very deliberately and on a daily or almost-daily basis over an extended period of time to conceal his access to substantial assets. He is charged not only with conspiring to defraud the government, but also with willfully attempting to evade the assessment of federal taxes. These offenses are based on evidence of deceit and the use of guile to defeat federal law.

6.    The evidence presented also gives valuable insight into the defendant's history and character. He is intelligent and savvy in business affairs, and has exhibited the ability to cause others to act, even when not necessarily in their own best interests, to further his selfish plan. He refused to obey the state licensing authority's order to produce documents relating to his business, and for years has circumvented the state's order that he not work at Johnstown Liquor. He has repeatedly used sophisticated means to conceal his activities and his true income.

7.     Given his substantial history of concealing assets, and in particular, with concealing cash and other fungible property such as precious metals, there is no reliable way for the Court to determine what resources the defendant has at his disposal which could be used to unable him to abscond. Given the nature of the charged offenses, the weight of the evidence against him, and the evidence of the defendant's use of sophisticated means to evade detection and compliance with federal law, it is not reasonable to conclude that any condition short of detention would reasonably assure his appearance. See United States v. Ervin, 818 F. Supp. 2d 1314, 1317-19 (M.D. Alabama 2011).

8.     The defendant's motion relies primarily on cases which hold that in most instances, a federal defendant is entitled to pretrial release on bond. That is true. Here, however, the government has presented substantial evidence and met its burden of establishing by a preponderance of evidence that Defendant Hershey presents a serious risk of flight and that no condition or combination of conditions would reasonably assure his appearance in court. Should the court decide that the presentation of additional evidence is necessary or desirable, the government is prepared to present additional evidence supporting its position on the issue of detention and to rebut any evidence presented or proffers made by the defendant.

Respectfully submitted,

JOHN F. WALSH
United States Attorney


By: s/ *Linda Kaufman*
Linda Kaufman
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: Linda.Kaufman@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 18th day of August, 2014, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT ALAN TIMOTHY HERSHEY'S MOTION FOR REVOCATION OF DETENTION ORDER AND THE SETTING OF CONDITIONS OF RELEASE (Doc. 29)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record,

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Ms. Christine Zorn
Pretrial Services Officer
E-mail: Christine_Zorn@cod.uscourts.gov

By: *s/ Solange Reigel*
SOLANGE REIGEL
Legal Assistant
United States Attorney's Office
1225 - 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0244
Fax: (303) 454-0402
E-mail: solange.reigel@usdoj.gov