

# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| Investigation #: | 1000232962 | Location: | 4968 Zenith Pkwy<br>Machesney Park, IL |
| Investigation Name: | Alan Hershey | | |
| Date: | July 20, 2012 | | |
| Time: | Approximately 3:40 pm - 4:04 pm | | |
| Participant(s): | Bruce Thompson, Taxpayer<br>Matthew Blankenship, Special Agent<br>Jason Stien, Witness | | |

On the above date and time Special Agent (SA) Blankenship and SA Stien met with Bruce Thompson (Thompson) at his residence located at 4968 Zenith Pkwy in Machesney Park, IL to discuss the sale of his prior residence in Colorado. SA Blankenship and SA Stien introduced themselves and displayed their credentials for inspection. The following are details of the conversation.

1. Thompson sold his home located at 1914 Ruddy Ct. Johnstown, Colorado in 2005. Thompson explained that he had to sell the house in Colorado because he had taken job at Woodward Governor close to Machesney Park IL and wanted to purchase the house where he currently is living in Machesney Park. The purchase of the house in Machesney Park was contingent on Thompson selling his home in Colorado.

2. Thompson explained that he had the Colorado home listed for sale for a period of time and listed it through Caldwell Bankers. He had listed the Colorado home for quite awhile and even reduced the price several times in an attempt to sell it but never got a decent offer. Thompson even contacted a few companies that purchased homes for cash but the offers for the home were way to low and the sales price would not have paid off the mortgage at Ocwen Loan that he still owed.

3. Thompson was getting desperate to sell his Colorado home because he wanted to purchase the house in Machesney Park. Thompson was afraid he was going to lose the house in Machesney Park to another buyer and would have to move in with his parents until he found another house. Thompson stated that he contemplated walking away from the Colorado home and letting the bank have it.

4. Thompson went on a trip to Colorado by himself for a week at some point in time in the summer of 2005 in a desperate attempt to sell his home. While he was there he went to a liquor store that he frequently went to while he lived in Colorado to purchase Fat Tire beer for a friend in Illinois. At the liquor store he was talking to the owner, Rachael, who he had known for six to seven years. Thompson knew Rachael from coming into the liquor store and he mentioned that he was desperate to sell his house. Thompson said he was desperate to sell and only get what he owed the bank for the house. Rachael asked where the house was located and he told her and she stated that she might be interested.

5. Rachael explained that if they liked the house her and her boyfriend/husband would purchase the house but it would have to be a cash deal. Thompson explained that he was unsure if the man Rachael was referring to was her boyfriend or her husband and that he never met the man but knew that he drove a fancy car. Thompson asked Rachael how he could believe or trust that she had enough cash for the deal so Rachael took Thompson to the back of the liquor store and she pulled out a large bag of cash.

6. Thompson showed the house to Rachael and they agreed to the sales price of what was owed to Ocwen. Thompson could not recall the specific amount of the sale but thought that he would have contacted Ocwen to get the correct amount prior to selling the house. Rachael explained that it would take awhile to place all of the cash into the bank to fund the loan payment because they did not want to put it all in at once.

7. The negotiations and commitment to sell the Colorado house between Thompson and Rachael took place while Thompson was visiting Colorado for the week after starting his job in the Machesney Park area.

8. Rachael took care of all the paperwork for the sale of the house and told Thompson that it needs to be handled this way since it is a cash deal. When asked why they did not use a title company Thompson explained Rachael said they did not need one since it was a cash deal. Rachael recorded the paperwork at the county and Thompson could not recall signing any specific paperwork.

9. SA Blankenship provided the warranty deed dated August 8, 2005 and Thompson stated that was his signature and thought this was the only paper he signed at the deal.

10. Thompson stated that he did not physically receive any of the funds after the sale and that Rachael was supposed to pay Ocwen Loan with the full payment to satisfy the loan. When asked if he signed the warranty deed before the Ocwen loan was paid off Thompson stated that he could not recall. He remembered calling Ocwen later and receiving verification that it was full paid but he was not sure if that took place before or after he signed the deed away

on the house.

11. Thompson does not know what CBRI Inc. is.

12. Thompson was provided a copy of and asked about the personal check he wrote from HSBC Bank to Charles Reichert on 8/8/2005 for $3,241.74 with the memo "1914 Ruddy Ct Sale" and he stated that it must have been for the sale of the Colorado home but he does not know who Charles Reichert is and did not recall the purpose of the check. Thompson thought Reichert might be Rachael's husband/boyfriend but he was not sure. He also thought the amount paid might have been for the difference between the sales price agreed upon and the amount left on the note from Ocwen. Thompson thought that the price agreed upon may not have covered the total amount for the payoff on the loan so at the last minute Thompson had to get up enough money to satisfy the loan.

13. Thompson was shown a copy of the cashier's check to Ocwen Loan from CBRI Inc. dated 8/8/2005 for $214,809.02 and he explained that must be the payment to pay off his loan but did not know who CBRI Inc. was.

14. Thompson does not know who ALAN HERSHEY or TIM HERSHEY is.

15. Thompson stated that he would look in his storage files for any paperwork he had on the transaction and would talk to his wife to see if she could recall any more specifics because he did not remember much. Thompson said he would look through his records and contact either SA Blankenship or SA Stien to provide and discuss them.

16. Thompson provided his cell number 815-713-0777 and his wife Linda's cell number 815-713-0779.

I prepared this memorandum on July 23, 2012, after refreshing my memory from notes made during and immediately after the interview with Bruce Thompson.

*Matthew Blankenship*
Matthew Blankenship
Special Agent

*Jason Stien*
Jason Stien

Special Agent

Page 1 of 1

 Union Colony Bank

04/13/09

Account: 0
Name:
Address:

The image shown below represents an official copy of the original document as processed by our institution



0   08/18/05   5-9-40   3241.74



http://192.168.188.72/gw-bin/gwgtwy.dll/print?20050818-5-9-40-50090040.htm        4/13/2009

U.S. v. HERSHEY: 14-cr-281-CMA-BNB           DEFENSE EXHIBIT 4         Page 5 of 9

Page 1 of 1

# Union Colony Bank

04/13/09

Account:     0136725
Name:        UNION COLONY BANK
Address:     DO NOT MAIL
             GREELEY, CO 00000

The image shown below represents an official copy of the original document as processed by our institution

073057   08/08/05   8-1-590   214809.02

http://192.168.188.72/gw-bin/gwgtwy.dll/print?20050808-8-1-590-80010590.htm          4/13/2009

## Warranty Deed

972

THIS DEED is a conveyance of the real property described below, including any improvements and other appurtenances (the "property") from the individual(s), corporation(s), partnership(s), or other entity(ies) named below as GRANTOR to the individual(s) or entity(ies) named below as GRANTEE.

The GRANTOR hereby sells and conveys the property to the GRANTEE and the GRANTOR warrants the title to the property, except for (1) the lien of the general property taxes for the year of this deed, which the GRANTEE will pay, (2) any easements and rights of way shown of record, (3) any patent reservations and exceptions, (4) any outstanding mineral interests shown of record, (5) any protective covenants and restrictions shown of record, (6) any additional matters shown below under "Additional Warranty Exceptions", and (7) subject to building and zoning regulations.

The Specific Terms of This Deed Are:

Grantor: (Give name(s) and place(s) of residence; if the spouse of the owner-grantor is joining in this Deed to release homestead rights, identify grantors as husband and wife.)

Bruce A. Thompson and Hermelinda Thompson (Husband and Wife) of the County of Rock, State of Wisconsin

Grantee: (Give name(s) and address(es). Statement of address, including available load or street number, is required.)

CBRI INC., A Colorado Corporation Whose Mailing address is P.O. Box 331 Johnstown, Colorado 80534, of the County of Weld, State of Colorado

Form of Co-Ownership: (If there are two or more grantees named, they will be considered to take as tenants in common unless the words "as joint tenancy" or words of the same meaning are added in the space below.)

Property Description: (Include county and state.)

JOH 1SF L32 BLKS STROH FARM FG#1, County of Weld State of Colorado

3321972 09/12/2005 03:30P Weld County, CO
1 of 1 R 6.00 D 21.25 Steve Moreno Clerk & Recorder

Property Address: 1914 RUDDY CT, Johnstown
Consideration: (The statement of a dollar amount is optional. Adequate consideration for this deed will be presumed unless this conveyance is identified as a gift. In any case this conveyance is specified, final and unconditional.)

Reservations-Restrictions: (If the GRANTOR intends to reserve any interest in the property or to convey less than he owns, or if the GRANTOR is restricting the GRANTEE's right in the property, make appropriate indication.)

Additional Warranty Exceptions: (Include deeds of trust being assumed and other matters not covered above.)

Executed by the Grantor on _____
Signature for Corporation, Partnership or Association:                 Signature for Individual(s):

_____                          _____
Name of Grantor Corporation, Partnership or Association                 Grantor

By _____                           _____
                                                        Grantor

By _____                           _____
                                                        Grantor

Attest: _____

STATE OF COLORADO
COUNTY OF _____ } ss.
The foregoing instrument was acknowledged before me this ___ day of ____
By _____

WITNESS my hand and official seal
My commission expires: _____                           Notary Public

STATE OF Illinois
COUNTY OF Winnebago } ss.
The foregoing instrument was acknowledged before me this 8th day of Aug 2005
By _____
("Name individual Grantor(s) or if Grantor is Corporation, Partnership or Association, then identify signers as president or vice president and secretary or treasurer of corporation; or as partner(s) of partnership; or as authorized member(s) of association.)

WITNESS my hand and official seal
My commission expires: 9-18-2008                        Laudean C. Enderle
                                                        Notary Public

"OFFICIAL SEAL"
LAUDEAN C. ENDERLE
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 09/18/2008



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Conversation

| | | |
|---|---|---|
| Investigation #: | 1000232962 | Location: |
| Investigation Name: | TIM HERSHEY | |
| Date: | March 11, 2013 | |
| Time: | 4:33pm – 4:39pm | |
| Participant(s): | Bruce Thompson | |
| | Mike Garvey, Special Agent | |

On the above date and time I Special Agent Mike Garvey received a phone call from Bruce Thompson (Thompson). Thompson provided substantially the following information:

1. When Thompson was interested in selling his house, he spoke with Rachel or Renee LNU (Renee hereafter) at the Johnstown Liquor located near the corner of Main Street and Parish Street. Thompson stated Hay's Market was at this location before it became Johnstown Liquor. Thompson described Renee as Hispanic between 5'3" - 5'5" inches tall, with dark hair and brown eyes, with a dark complexion. Thompson stated Renee was the owner of Johnstown Liquor.

2. Thompson wondered if Renee really had the money to buy his house. Thompson went with Renee to the back of the liquor store where she showed him a floor safe, dialed the combination to the safe and opened it up to show Thompson a large amount of cash inside the safe.

3. Renee told Thompson she would have to talk to her boyfriend about purchasing Thompson's house. Thompson said Renee referred to the man as her live in boyfriend. Thompson only showed the house to Renee though.

4. Renee's boyfriend drove around town in a Hummer, possibly red in color though Thompson was not sure.

5. Thompson stated Renee lived with the man in a house near County Road 15 or 17.

6. Thompson agreed to look for any records he might have regarding the sale of his house at 1914 Ruddy Court, Johnstown, CO and provide them to the special agent.

Memorandum  Page 1 of 2                                                      U.S. Treasury Criminal Investigation

**U.S. v. HERSHEY: 14-cr-281-CMA-BNB**          **DEFENSE EXHIBIT 4**          Page 8 of 9

*M.D. Garvey*
Special Agent