IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-281-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **ALAN TIMOTHY HERSHEY,**
2. RENEE MOLINAR

    Defendants.

---

**Government's Objections to the Presentence Report (Doc. #71)**

---

The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado and Assistant United States Attorney Linda Kaufman, hereby sets forth its objections and corrections to the Presentence Investigation Report (Doc. #71), which was filed on July 28, 2015.

**Paragraph 43**: In recounting statements made by Renee Molinar, the last sentence of this paragraph states, "Generally, Molinar would remove anywhere from $500 to $800 per day in cash and place it in the store for safekeeping, later delivering it to Hershey at his instruction." In fact, Molinar stated that she removed $500- $800 *or more* a day. The Keystroke point of sales records provided by the unindicted co-conspirator established that amounts ranging from approximately $1,100 to $6,100 were typically removed on a daily basis.

**Paragraph 44**: Although it is true that bank deposits were made in amounts less than $10,000 in an attempt to avoid the reporting requirements to the IRS, the placement of this paragraph, following Paragraph 43 as it does, is somewhat

1

misleading. The regular deposits to the business's bank account typically contained very small amounts of cash, usually in the $200.00 to $250.00 range. The significance of the deposits of cash under $10,000 is that these deposits were *just under* $10,000 and were often made on the same day or on consecutive days just before a much larger sum was then withdrawn to enable a nominee to purchase a parcel of real estate for cash at Hershey's direction. (Doc. #66 at 14-15.)

**Paragraph 51**: The thrust of this paragraph misconstrues the timing and value of the comparative cooperation given by the unindicted co-conspirator and Defendant Molinar when it states that the unindicted co-conspirator "provided information that supported much of Molinar's information." The unindicted co-conspirator voluntarily appeared at the U.S. Attorney's Office on May 29, 2013, more than a year prior to the indictment, and not only answered questions, but also produced physical evidence that the government at the time did not know existed. Most significantly, he provided a thumbdrive copy of the Keystroke point of sale records from Johnstown Liquor that he had made, unbeknownst to both Molinar and Hershey in 2011, when Hershey told him to put a new computer system in Johnstown Liquor and make sure there were no old records on the new system. (Doc. #66 at 18).

This copy of the point of sales records captured every transaction that was conducted at the cash registers of the business from 2001 to August, 2011. It established what the IRS had been attempting to prove by circumstantial evidence alone — that the amounts deposited into Johnstown Liquor's bank accounts substantially understated the business's gross receipts, that the QuickBooks records given at Hershey's direction to the accountant who prepared the business's employment tax returns substantially understated the actual wages paid, that the state sales tax collected was substantially greater than that reported and paid to the Colorado

Department of Revenue, and that large amounts of cash had regularly been skimmed from the sales receipts. This information was used to bring the indictment. The information provided by Molinar post-indictment corroborated much of the evidence that the unindicted co-conspirator had already provided, not the other way around. His estimate of the amounts withdrawn from the stores in daily amounts varying from $1,200 to $6,000 was considerably more accurate, based on the Keystroke records, than was Molinar's.

**Paragraph 52**: The substance of this paragraph is correct, but it should again be noted that the unindicted co-conspirator did not "confirm" what Molinar had said. To the contrary, she confirmed, post-indictment, much of the evidence that he had previously provided.

**Paragraph 53**: It should be noted that the events described in this paragraph by Molinar occurred shortly after the IRS Special Agent interviewed Molinar and the unindicted co-conspirator in July of 2011. Molinar said that Hershey took 2-3 "beer flats" full of $100 bills out of the store at that time.

**Paragraph 54:** Although Molinar did operate solely at the direction of Hershey and did not benefit from the fraud to the extent that he did, she did consistently receive wages for working at Johnstown Liquor throughout the scheme.

**Paragraph 58**: This paragraph appears to relate to whether Co-defendant Molinar should receive the adjustment for obstruction of justice, and should be omitted from this report. The adjustment for obstruction by Defendant Hershey appears at Paragraph 68.

**Paragraph 64:** $1,777,183.28 is the *actual* loss in this case, rather than the "*intended*" loss, as those terms are defined in U.S.S.G. § 2B1.1 Appl. Note 3 (2011).

**Paragraph 65:** The following sentence should be added to this paragraph: specifically, the defendant had employees paid in cash, and told them not to file returns.

3

**Paragraph 67:** This paragraph should be expanded to include the following: The defendant directed the co-defendant to skim cash from Johnstown Liquor's receipts and he directed the co-defendant and unindicted co-conspirator to use a second set of books (QuickBooks) to conceal the true receipts of the business. He directed the co-defendant to pay employees wages in cash and to conceal the true amount of wages paid from the company's accountant, who prepared the employment tax returns. He also caused the co-defendant and unindicted co-conspirator to create and file state sales tax returns that substantially understated the true amount of the sales taxes collected.

**Paragraph 68**: The adjustment for obstruction of justice is warranted because after it became apparent to the defendant in July 2011 that the IRS had begun its criminal investigation, he removed cash from the Johnstown Liquor store, directed others to remove all paperwork from the store that would show what the actual sales were, to put a new computer system in the store, and to make sure that there were no old records in that system. (Doc. 66 at 17-18). However, he did not personally provide false information to the case agent, as stated in Paragraph 68. He did not speak to the case agent.

**Paragraph 114 and 116**: The government's position is that the defendant failed to disclose all of his assets to the probation officer. First, he failed to disclose the amount he holds in his personal bank account at BBVA. Nor did he clearly indicate who owes him $195,000.

There is also reason to believe that he owns gold, silver, and platinum bars. In March 2012, when the defendant and Molinar sold real properties to his uncle, the defendant received $462,058.64 and Molinar received $541,868.37 at the closings. Hershey used the proceeds he received to make two purchases of gold, platinum, and

4

silver bars on April 17, 2012 and April 24, 2012, for $294,964.03 and $164,350.82 respectively. (Doc. #66 at 16-17). Those metals were shipped to Johnstown Liquor, and according to Molinar, picked up by Hershey. Molinar's check was deposited into the Johnstown Liquor account. On March 28, 2012, she withdrew it in cash, and according to bank employees, put the cash into a backpack and left the bank with it. Molinar has stated that when she left the bank, she met the defendant in a gas station across the street, and gave him that cash.

In addition, there is reason to believe that the defendant has a substantial hoard of cash. In March 2015, an employee at Johnstown Liquor, was arrested for trying to steal the business's safe. Shortly after, he informed IRS Special Agent Garvey and others that in the spring of 2014, while working in the basement of the store, he found six beer flats that were filled with $100 bills. He counted out one bundle and saw that it contained $50,000. Multiplying the number of bundles in each flat by six, he estimated that the containers held $3,000,000 in cash. He hid the cash in another part of the store. When Hershey found out that the cash was missing, he closed the store and interrogated the employees until the employee admitted having moved the cash and returned it to Hershey.

On March 16, 2015, Special Agent Garvey questioned Renee Molinar about a number of topics without telling her what he had learned from the above-described employee. She described the same incident, stating that she was one of the employees held at the store and questioned by Hershey. She said that Hershey demanded that the $2,000,000 in cash be returned to him, saying that he needed it to pay his taxes. That Hershey has kept large stashes of cash is consistent with other evidence in this case. For example, in about August 2005, when Hershey was negotiating the purchase of 512 12th Street, Gilcrest, Colorado and the seller did not

5

believe he could pay cash for it, he pulled out a suitcase from the back room of the Gilcrest Liquor store and showed the seller that it was full of cash.

**Paragraph 132**: The government agrees that the applicable guideline range is 57 to 71 months' incarceration. However, the report incorrectly states that "because the applicable guideline range is greater than the statutorily maximum sentence, pursuant to § 5G1.1(c), the guideline imprisonment range is 57 to 60 months." That would be true if there were only 1 count of conviction, but in this case, there are three. The defendant has pled guilty to Count 1 (conspiracy) and Counts 8 and 11 (tax evasion). § 5b.1.(c)(1), which provides that "the sentence may be imposed at any point within the applicable guideline range, provided that the sentence is no greater than the statutory authorized maximum sentence," applies in cases in which there is a single count of conviction.

§ 5G1.2 applies here. Pursuant to § 5G1.2(d), "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall be run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."

The maximum statutory sentence for each count of conviction in this case is 5 years. Therefore, under the guidelines, the defendant can be sentenced to 60 months on one count and up to 11 months consecutively on one or more of the other counts. See also § 5G1.2 Appl. Note 1: "If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment."

**Paragraph 133**: The government's position is that the last sentence should be

6

revised to more accurately state, "Had he been convicted at all counts at trial, all counts would have been grouped, but the defendant would not have received the 3-level reduction for acceptance of responsibility under § 3E1.1, and the government would not have been bound to recommend a sentence within the applicable guideline range as determined by the Court."

**Paragraph 142**: Pursuant to § 5E1.2, the fine range is $10,000 to not more than the greatest of $100,000, twice the gross loss, or twice the gross gain, plus applicable interest and penalties. This is true because under § 5E1.2(c)(4), the maximum fine of $100,000 under subsection (c)(2) does not apply if the defendant is convicted under a statute authorizing a maximum fine greater than $250,000. In this case, the defendant was convicted under 18 U.S.C. § 371, for which a fine of not more than $250,000 or the greater of twice the gain or twice the gross loss from the offense can be imposed, pursuant to 18 U.S.C. § 3751(d).

**Paragraph 149**: It would be more accurate to state in the last sentence, "The unindicted co-conspirator did so, but unbeknownst to the defendant, he kept a copy of the point of sales records."

Respectfully submitted,

By: s/ *Linda Kaufman*
Linda Kaufman
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: Linda.Kaufman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on this day 7th of August, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

Michael F. Arvin
E-mail: arvinlawoffices-ecf@arvin-denver.com

Gary Burney (US Probation Department)
Email: Gary_Burney@cod.uscourts.gov

By: *s/ Mariah Tracy*
MARIAH TRACY
Legal Assistant
United States Attorney's Office
1225 - 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0205
Fax: (303) 454-0402
E-mail: Mariah.Tracy@usdoj.gov