IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-281-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ALAN TIMOTHY HERSHEY,
**2.    RENEE MOLINAR**

    Defendants.

---

### Government's Objections to the Presentence Investigation Report (Doc. #70)

The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado and Assistant United States Attorney Linda Kaufman, hereby sets forth its objections and corrections to the Presentence Investigation Report (Doc. #70), which was filed on July 27, 2015.

**Paragraph 7:** The address for the Colorado Department of Revenue is:

> Colorado Department of Revenue,
> Criminal Investigation Section,
> P.O. Box 8825, Denver, CO 80201

**Paragraph 39:** It would be more accurate to state that "more recently she has provided *more* complete information regarding her conduct and the conduct of others involved in this case." And "*Some of* her statements center on the purchase of properties by Hershey under others names…" Since more of Molinar's statements are described in later paragraphs (i.e., Paragraph 44), it would be helpful to state here that "she also described in detail the bookkeeping methods used at Johnstown Liquor, as further described in Paragraph 44, below."

1

**Paragraph 41:** A more accurate statement for the third sentence would be, "In March 2001, Hershey re-purchased the store in Molinar's name."

**Paragraph 43:** It should he noted that the listing was removed from the website shortly thereafter, and the business was not sold.

**Paragraph 45:** In recounting statements made by Renee Molinar, the last sentence of this paragraph states, "Generally, Molinar would remove anywhere from $500 to $800 per day in cash and place it in the store for safekeeping, later delivering it to Hershey at his instruction." In fact, Molinar stated that she removed $500 to $800 *or more* a day. The Keystroke point of sales records provided by the unindicted co-conspirator established that amounts ranging from approximately $1,100 to $6,100 were typically removed on a daily basis.

**Paragraph 46:** Although it is true that bank deposits were made in amounts less than $10,000 in an attempt to avoid the reporting requirements to the IRS, the placement of this paragraph, following Paragraph 45 as it does, is somewhat misleading. The regular deposits to the business's bank account typically contained very small amounts of cash, usually in the $200 to $250 range. The significance of the deposits of cash under $10,000 is that these deposits were *just under* $10,000 and were often made on the same day or on consecutive days shortly before a much larger sum was then withdrawn to enable a nominee to purchase a parcel of real estate for cash at Hershey's direction. (Doc. #63 at 15-16.)

**Paragraph 53**: The thrust of this paragraph misconstrues the timing and value of the comparative cooperation given by the unindicted co-conspirator and Defendant Molinar when it states that the unindicted co-conspirator "provided information that supported much of Molinar's information." The unindicted co-conspirator voluntarily appeared at the U.S. Attorney's Office on May 29, 2013, more than a year prior to the

2

indictment, and not only answered questions, but also produced physical evidence that the government at the time did not know existed. Most significantly, he provided a thumbdrive copy of the Keystroke point of sale records from Johnstown Liquor that he had made, unbeknownst to both Molinar and Hershey in 2011, when Hershey told him to put a new computer system in Johnstown Liquor and make sure there were no old records on the new system. (Doc. #63 at 18).

This copy of the point of sales records captured every transaction that was conducted at the cash registers of the business from 2001 to August, 2011. It established what the IRS had been attempting to prove by circumstantial evidence alone — that the amounts deposited into Johnstown Liquor's bank accounts substantially understated the business's gross receipts, that the QuickBooks records given at Hershey's direction to the accountant who prepared the business's employment tax returns substantially understated the actual wages paid, that the state sales tax collected was substantially greater than that reported and paid to the Colorado Department of Revenue, and that large amounts of cash had regularly been skimmed from the sales receipts. This information was used to bring the indictment. The information provided by Molinar post-indictment corroborated much of the evidence that the unindicted co-conspirator had already provided, not the other way around. His estimate of the amounts withdrawn from the stores in daily amounts varying from $1,200 to $6,000 was considerably more accurate, based on the Keystroke records, than was Molinar's.

**Paragraph 54**: The substance of this paragraph is correct, but it should again be noted that the unindicted co-conspirator did not "confirm" what Molinar had said. To the contrary, she confirmed, post-indictment, much of the evidence that he had previously provided.

**Paragraph 55**: It should be noted that the events described in this paragraph by Molinar occurred shortly after the IRS Special Agent interviewed Molinar and the unindicted co-conspirator in July of 2011. Molinar said that Hershey took 2-3 "beer flats" full of $100 bills out of the store at that time.

**Paragraph 56:** Although Molinar did operate solely at the direction of Hershey and did not benefit from the fraud to the extent that he did, she did consistently receive wages for working at Johnstown Liquor throughout the scheme.

**Paragraph 57:** In the third sentence, the report states, "Therefore, it appears that the court can order full restitution…" It should be changed to the state that the court "must" order full restitution.

**Paragraph 59:** The second sentence in this paragraph would be more accurate and complete if it stated, "She also provided false information regarding the source of the funds she used to buy properties in her name and regarding loans she purportedly made to individuals named as owners of different properties and businesses."

**Paragraph 64:** $1,464,952.05 is the *actual* loss in this case, rather than the "*intended*" loss, as those terms are defined in U.S.S.G. § 2B1.1 Appl. Note 3.

**Paragraph 65:** In particular, the government would note that the defendant paid numerous employees their wages in cash or partly in cash; she paid others by check. Employees paid by cash were given check stubs showing deductions and were issued Form W-2 Wage and Tax Statements at year's end. Any employees paid entirely in cash were issued no Form W-2's. Those who were paid partly in cash and partly by check received Form W-2's reflecting only the payments made by check. The defendant provided the accountant preparing Johnstown Liquor's employment tax returns no information about the cash wages; she only provided her information about the wages paid by check. Nor did the defendant withhold any taxes from the wages paid in cash.

4

This conduct was intended to encourage employees not to report their wages paid in cash. (See Doc. #63 at 13-15.)

**Paragraph 68**: The adjustment for obstruction of justice is warranted because after it became apparent in July 2011 to the defendant that the IRS had begun its criminal investigation, she removed boxes of documents from the store at Hershey's direction to remove all the paperwork that show what the actual sales were, and she hid those documents. However, we do not have any evidence that she destroyed documents.

**Paragraph 119:** The Mandatory Restitution Act does apply in this case, as stated in Paragraph 57. The complete address for the Colorado Department of Revenue is

> Colorado Department of Revenue,
> Criminal Investigation Section,
> P.O. Box 8825, Denver, CO 80201

**Paragraph 120:** § E1.1(a)(1) provides that the court *shall* enter an order of restitution for the full amount of the victim's loss, if such an order as authorized under 18 U.S.C. § 3663A, as in the case here.

**Page R-2:** The address for the Colorado Department of Revenue is: Colorado Department of Revenue, Criminal Investigation Section, P.O. Box 8825, Denver, CO 80201. The payment should reference "unpaid sales taxes for Johnstown Liquor.

> Respectfully submitted,
>
> By: s/ *Linda Kaufman*
> Linda Kaufman
> Assistant United States Attorney
> 1225 Seventeenth Street, Suite 700
> Denver, Colorado 80202
> Telephone: (303) 454-0100
> Facsimile: (303) 454-0404
> E-mail: Linda.Kaufman@usdoj.gov

5

**CERTIFICATE OF SERVICE**

  I certify that on this day 10th of August, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

Amanda B. Cruser
E-mail: abcruser@vfblaw.com

Gary Burney (US Probation Department)
Email: Gary_Burney@cod.uscourts.gov

                By: *s/ Mariah Tracy*
                MARIAH TRACY
                Legal Assistant
                United States Attorney's Office
                1225 - 17th Street, Suite 700
                Denver, CO 80202
                Telephone: (303) 454-0205
                Fax: (303) 454-0402
                E-mail: Mariah.Tracy@usdoj.gov