**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.  14-cr-00281-CMA-2

UNITED STATES OF AMERICA,

    Plaintiff,

V.

RENEE MOLINAR,

    Defendant.

_____

**DEFENDANT RENEE MOLINAR'S SENTENCING
MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE
AND VARIANCE (NON-GUIDELINE SENTENCE)**
_____

Defendant Renee Molinar entered a plea of guilty to Court 1 of the Indictment, charging a violation of 18 U.S.C. §371, Conspiracy to Defraud the United States.  Defendant Renee Molinar, through undersigned counsel, Amanda B. Cruser, respectfully asks this Court to grant a request for a downward departure and/or a variance in her recommended guidelines sentence.  Attached as an exhibit to this memorandum are scanned copies of character reference letters written by family and friends of Ms. Molinar.  In support thereof, Defendant Molinar states as follows:

<u>Procedural History</u>

1.    On July 3, 2014, Ms. Molinar was charged by indictment with one (1) count of violating 18 U.S.C. 371, Conspiracy to Defraud the United States.  She was charged as a Co-Defendant of Alan Timothy Hershey and he was charged with one (1) count of Conspiracy to

1

Defraud the United States and ten (10) counts of Tax Evasion.  She was arrested on July 14, 2014, pursuant to an arrest warrant, and was arraigned and released subject to an unsecured bond and conditions of release.

2.	On May 7, 2015, Ms. Molinar entered a plea of guilty to Count 1 of the Indictment.  On May 13, 2015, Co-Defendant Alan Timothy Hershey entered a plea of guilty to Counts 1, 8 and 11 of the Indictment.  Sentencing dates were set and staggered for Ms. Molinar and Defendant Hershey based on Ms. Molinar's cooperation in the case against Defendant Hershey.  The government agreed that it was appropriate to hold Ms. Molinar's sentencing after Defendant Hershey's sentencing due to the Government's contemplation of filing a request for a downward departure for Ms. Molinar pursuant to U.S. Sentencing Guidelines §5K1.1 based on her cooperation and the substantial assistance that she provided to authorities in its prosecution of Defendant Hershey.

3.	One condition of the Defendant Hershey's plea agreement was that he pays the determined restitution amount of $1,777,183.28 prior to sentencing.  Sentencing has been continued on two occasions due to requests by Defendant Hershey for additional time to raise the funds required.  Sentencing for Defendant Hershey is currently scheduled for March 22, 2016 and sentencing for Ms. Molinar is scheduled for April 6, 2016.

Sentencing Procedures

Pursuant to *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007),

> A district court should begin by correctly calculating the applicable
> Guidelines range. The Guidelines are the starting point and initial
> benchmark but are not the only consideration.   After permitting
> both parties to argue for a particular sentence, the judge should
> consider all of 18 U.S.C. § 3553(a)'s factors to determine whether
> they support either party's proposal. He may not presume that the

> Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. He must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Ms. Molinar objects to the presumption that the Sentencing Guidelines here are reasonable. The Court should not apply the otherwise applicable Sentencing Guidelines created pursuant to 18 U.S.C. § 3553 because the guidelines are merely advisory in the context of "other statutory concerns." *United States v. Booker*, 543 U.S. 220, 245 (2005). Section 3553(a) lists seven factors to be considered in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).

### *Factual Background*

Mr. Molinar was born on March 26, 1968 and will be 48 years old at the time of her sentencing. She is one of six children born to Hope Alvarez. Her siblings include older sister Tammy, and younger siblings Joette, Nicole, Johnnie and Juan. Ms. Molinar's sister Joette Molinar in her character reference letter, which is attached as Exhibit 1, stated that "Our mother was single and our fathers were absent." Hope Alvarez is described by all as having had numerous relationships with abusive men. Unfortunately, the children were also abused by the

3

men in Hope's life.  Ms. Molinar's two youngest siblings, Johnnie and Juan, were born to Hope and Juan Alvarez.  Hope and Juan married and he regularly beat Hope to the point that she had to be admitted to the hospital for injuries to her face, for a broken arm, and for broken ribs.  He also sexually abused Renee, Nicole and Joette in the basement of their home for an extended period of time.  When the eldest of the children, Tammy, learned of the sexual abuse she gave their mother an ultimatum to choose between her husband and her children.  Hope choose to stay with her husband.  At that point, Tammy took Renee, Joette and Nicole to live with their grandparents.  The character reference letters that are attached confirm that Ms. Molinar had a very difficult childhood and that she did all she could to be resilient.  She is also described as a person who worked hard in school, participated in sports and stayed out of trouble despite having any real supervision.  All of her siblings recognize that Ms. Molinar never received any counseling for the sexual abuse that she endured as a child and for witnessing, on a regular basis, her mother engage is a series of abusive relationships.

Based on the character reference letters that are attached as Exhibit 1, it is clear that most of the daughters born to Hope Alvarez have struggled with abusive relationships and all of them believe that Ms. Molinar was also a victim of an abusive relationship with Defendant Hershey.  According to all accounts, from the time that Defedant Hershey came into Ms. Molinar's life he immediately began to control it, dictating what she could do and isolating her from her friends and her family.  Ms. Molinar met Defendant Hershey in 1993, at the age of 25, and began working at the Johnstown Liquor Store.  She has worked at the Johnstown Liquor Store ever since, seven days a week, ten to fifteen hours per day.  Defendant Hershey micro-managed and dictated everything she did.  In the attached character reference letters, you will note that several of Ms. Molinar's relatives and friends reflected on the fact that Defendant Hershey regularly

called or visited Ms. Molinar in order to question her, harass her, and make threats about issues related to the liquor store. Ms. Molinar was constantly being emotionally abused and threatened by Defendant Hershey. Ms. Molinar's cousin and roommate, Teresa Alba, recalls in her character reference letter that is attached, a time when she witnessed Defendant Hershey cornering Ms. Molinar in the garage of their home and threatened to burn down the liquor store and Ms. Molinar's grandmother's home if she ever tried to take the liquor store from him. Other references recall him repeatedly calling her after midnight and keeping her on the phone for hours at a time while he yelled and belittled her to the point that she was distraught and in tears.

During the period of the conspiracy, Ms. Molinar did not financially benefit by the schemes orchestrated by Defendant Hershey. She was an employee at the liquor store and earned a meager salary that when calculated against the number of hours she worked likely amounted to less than minimum wage. She did not reap the profits of the business. Defendant Hershey kept all of the money for himself. He used Ms. Molinar and others to purchase real property for him in their own names and received the rents from those properties and controlled when they were sold. He purchased a modest home that was held in Ms. Molinar's name and had told her that she could keep it and later required her to sell it and kept the proceeds for himself. Ms. Molinar has always lived paycheck to paycheck, has no significant assets, other than a small home that was left to her by her grandmother, drives an old car and has never had the time or the money to take vacations. Every year she wanted to file her taxes reporting her own income and Defendant Hershey prevented her from doing so since she was "listed" as the owner of Johnstown Liquor and her return would be inconsistent with her "ownership" of the business. Instead, he insisted that she not file a tax return, but instead; simply pay into the IRS an amount of tax that was equal to what she would have owed if she had filed a tax return.

It is undersigned counsel's position that Ms. Molinar was intimidated by Defendant Hershey and feared for her safety and from his retaliation if she questioned him or did not do what he asked. After Ms. Molinar and Defendant Hershey were indicted and Defendant Hershey was ordered to be detained, all communication with him ceased and shortly thereafter, Ms. Molinar gained the courage to come forward and provide assistance to the government. She agreed to provide information relating to Defendant Hershey and participated in conferences with the Government on September 5, 2014, October 14, 2014 and March 16, 2015 in which she answered questions and provided information for several hours at a time. She also had access to some of the Johnstown Liquor Store original records and on October 1, 2014, provided 18 boxes of records including original daily income reports dating back to 2011, sales tax records, invoices, and computer hard drives. On October 14, 2014, she provided cash logs going back to 2001, copies of checks and 54 additional boxes of credit card receipts and bank records. She has feared retaliation by him ever since.

<u>Offense and Sentencing Guidelines</u>

Ms. Molinar has entered a plea of guilty to one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. §371. This charge carries a maximum penalty of five years of imprisonment, and/or a fine of not more than $250,000, not more than 3 years' supervised release; a $100 special assessment fee, plus restitution. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision. It is a Class D felony.

In tax cases, the base offense level is determined by the intended tax loss. The tax loss is typically calculated as the amount of tax loss from all related conduct. In this case, the parties

have agreed that the applicable tax loss is $1,464,952.05. It has also been agreed upon that the appropriate Sentencing Guidelines Manual is for the year 2011. Thus, the applicable tax loss is more than $1,000,000, but less than $2,500,000 for an offense level of 22. This tax loss is based on Defendant Hershey's income from the Johnstown Liquor Store. Thus, as a co-conspirator, Ms. Molinar is sentenced based on the Co-Defendant's tax loss despite the fact that she did not personally receive the income. Ms. Molinar agrees that restitution, totaling the tax loss of $1,464,952.05, results from her conduct in the conspiracy, and thus she will be held jointly and severally liable for this amount although she has few assets and little income. To that extent, she has been hopeful that Defendant Hershey would abide by the terms of his plea agreement requiring him to pay the full amount owed prior to his sentencing.

## Acceptance of Responsibility §3E1.1

Ms. Molinar has qualified for a three (3) level reduction due to her acceptance of responsibility and for timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.

## Downward Departure for Substantial Assistance to the Government §5K1.1

Pursuant to the Plea Agreement, and conditioned upon Ms. Molinar's guilty plea and full and truthful cooperation, the Government agreed to recommend a downward departure for Ms. Molinar's assistance to the government in its prosecution of Defendant Hershey. The U.S. Sentencing Guidelines provide for a departure from the guidelines pursuant to §5K1.1, which provides that the appropriate reduction shall be determined by the Court for reasons stated that

may include, but are not limited to, consideration of the following:

(1)   the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)   the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)   the nature and extent of the defendant's assistance;

(4)   any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5)   the timeliness of the defendant's assistance.

Here, Ms. Molinar came forward shortly after the arraignment of the parties, to provide full and truthful cooperation. She met with Assistant United States Attorney Linda Kaufman and Special Agent Michael Garvey on several occasions and provided more than 70 boxes of original records. She provided information that was useful to the Government and used by the Government in the Detention Hearing held on October 20, 2015 in which the Government prevailed in having Defendant Hershey detained. She was willing to testify against Defendant Hershey in spite of her fear of him in the event that he proceeded to trial.

Ms. Molinar has been under the influence and control of Defendant Hershey and has been manipulated by him since 1993 when she became engaged in a relationship with him and began working at the Johnstown Liquor Store. Ms. Molinar and other government witnesses have described multiple events in which Defendant Hershey believed one of the employees was stealing from him and he held the employees in a back room of the liquor store for hours at a time while he threatened them and accused them of stealing from him. Ms. Molinar's family and friends in the attached character reference letters attached as Exhibit 1, have noted observations

in which Defendant Hershey harassed, belittled, and threatened Ms. Molinar on a regular basis.

Ms. Molinar recognizes that she should have come forward sooner. It wasn't until Defendant Hershey was in jail and was unable to communicate with her that she gained the courage to come forward. She had been terrified to betray Defendant Hershey, not just because of her fear of his retaliation, but also because any betrayal of him would change her life as she knew it. She had spent most of the last two decades working at the Johnstown Liquor Store seven days a week for ten to fifteen hours per day. Other than working for Defendant Hershey and having to abide by his rules, she loved working with the community and being at the store. The idea of having to leave that and find new employment was also very unsettling. The unindicted co-conspirator, referred to as "C.R." in the Indictment, came forward early and perhaps for that reason avoided prosecution. Prior to the time he provided information to the government, he had a falling out with Defendant Hershey when Defendant Hershey accused him of stealing money from him.

<u>Downward Departure for Coercion and Duress §5K2.12</u>

Pursuant to §5K2.12, the U.S. Sentencing guidelines provide that if the defendant committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of the coercion, blackmail, or duress involved.

The evidence in this case establishes that Ms. Molinar always followed Defendant Hershey's instructions and she realizes this is not an excuse for her actions. From the

perspective of undersigned counsel, it seems that Defendant Hershey has victimized and manipulated everyone that he has come into contact with.  He has likely intentionally surrounded himself with people that he could control and intimidate.  Given Ms. Molinar's childhood and upbringing, exposure to abusive relationships and domestic violence, and lack of a higher education, she was vulnerable and lacked the self confidence to recognize an abusive relationship and was unable to completely remove herself from it.  It is undersigned counsel's position that she would not be before the Court if she had never met Defendant Hershey.  She did not instigate the conspiracy or direct it, she went along with it and did what she was directed to do, without question because she was intimidated and feared Defendant Hershey.  She also did not financially benefit from Defendant Hershey's schemes.

<u>Factors Supporting a Variance from the Sentencing Guidelines</u>

Ms. Molinar, through undersigned counsel, is asking for leniency from the Court in this case.  The Government provided in the Plea Agreement that it intended to recommend a departure of at least 20 percent from the bottom of the applicable guideline range as determined by the Court.  Assuming that Ms. Molinar is at an offense level of 23, the applicable sentencing range would be 46 to 57 months.  A 20 percent departure from the bottom of that range would result in a sentence of approximately 36 months.  Given Ms. Molinar's cooperation in this case coupled with the evidence that she did not benefit from the conspiracy and that she was also a victim of Defendant Hershey's manipulations, the sentence does not seem fitting.  Ms. Molinar's friends and family who witnessed Defendant Hershey's control over Ms. Molinar and his abuse of her for more than two decades are asking the Court in their attached letters for leniency and hope that the Court will impose a sentence of probation with required counseling.  As counsel for

Ms. Molinar, I urge the Court to carefully consider the character reference letters prior to imposing a sentence and in the event that the Court makes a determination that a period of incarceration is necessary, undersigned counsel requests the Court to consider a sentence of one year and a day.

Respectfully submitted this 20th day of March, 2016.

                                                                           s/Amanda B. Cruser\
*Amanda B. Cruser*\
Boog & Cruser, P.C.\
3333 S. Wadsworth Blvd., D-201\
Lakewood, CO 80227\
Phone: (303) 986-5769\
Fax: (303) 985-3297\
abcruser@vfblaw.com\
Attorney for the Defendant

CERTIFICATE OF SERVICE

      I hereby certify that on March 20, 2016, I electronically filed the forgoing **DEFENDANT RENEE MOLINAR'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE AND/OR VARIANCE (NON-GUIDELINE SENTENCE)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record:

Linda S. Kaufman, AUSA
Robert W. Ford, U.S. Probation Officer

                                        s/Amanda B. Cruser_____
                                        *Amanda B. Cruser*